United States District Court
Southern District of Texas
**ENTERED**
August 17, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ZENITH SURGERY CENTER, PLLC, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-24-3165 |
| v. | § | |
| | § | |
| OCCIDENTAL PETROLEUM CORPORATION, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This dispute arises out of an assignment of healthcare benefits. Zenith Surgery Center, PLLC and Sonazo Anesthesia, PLLC, sued Occidental Petroleum Corporation and Anadarko Petroleum Corporation for denying, or insufficiently reimbursing, the costs of healthcare services provided to two patients who were beneficiaries of Anadarko's employee health benefits plan. (Docket Entry No. 1). Occidental and Anadarko have moved for summary judgment, arguing that the Plan's anti-assignment clause precludes this suit; that the ERISA claims are duplicative; and that ERISA preempts the state-law claims. (Docket Entry No. 31). Based on the pleadings, the motion, the record, oral argument, and the applicable law, the court grants in part and denies in part the motion for summary judgment. The reasons are set out below.

## I. Background

This lawsuit involves payment for the care that two healthcare providers, Zenith and Sonazo, provided to beneficiaries of Anadarko's healthcare plan. (Docket Entry No. 1 ¶ 10).[1] In

[1] Because the parties have conducted only jurisdictional discovery, some of the facts are taken from the original complaint. (Docket Entry No. 31 at 4).

August 2019, Occidental acquired Anadarko and assumed control of the Plan. (Docket Entry No. 31-1 ¶ 4). As relevant here, the Plan contained an anti-assignment clause prohibiting any Plan participant and beneficiary from assigning their rights, benefits, or causes of action. (Docket Entry No. 31-2 § 7.8). This part of the Plan reads as follows:

> Except as otherwise expressly provided under the terms of a written agreement with a provider of healthcare services or supplies to which the Plan Administrator, the Claims Fiduciary, or other delegate of the Plan Administrator is a named party (a "**Plan Agreement**"), no rights, causes of action and benefits under the Plan can be assigned or transferred to any person or entity, including, but not limited to, an out-of-network healthcare provider (or any representative or agent with respect to such provider), either before or after healthcare services or supplies are provided to, or on behalf of, a Participant. For purposes of clarification and not limitation, such rights and causes of action that a Participant or other individual may have under ERISA, including, but not limited to, any right to (a) make a claim for Plan benefits, (b) request the Plan document or other documents related to the Plan or a claim for benefits, (c) file an appeal of a denied claim for Plan benefits, or (d) file a lawsuit under ERISA or other applicable law.
>
> In the absence of a Plan Agreement which specifically provides for assignment of the Participant's benefits and/or rights under the Plan (*i.e.*, is not merely an agreement between the Participant and the provider or its representative or agent), the Plan Administrator and Claims Fiduciary, as applicable, each reserve the unilateral right and discretion to elect to make any benefit payment under the Plan directly to the provider, the Participant, or to another designated person or entity, with or without the Participant's authorization, with each such payment being made on behalf of the Participant, and not to such payment recipient in its, his or her own right. Moreover, if the Plan Administrator or Claims Fiduciary, as applicable, elects to make any such direct payment, it shall not constitute a waiver by the Plan Administrator or Claims Fiduciary of the anti-assignment provisions of this Section 7.8. [. . .]

(*Id.*). The anti-assignment provision was also explained in the Summary Plan Description ("SPD"). (Docket Entry No. 31-3 § 10.8).

In 2020, Zenith and Sonazo provided medical treatment to two Plan beneficiaries, Jeff Reimer and Sandra Alton.[2] (Docket Entry No. 1 ¶ 11). United was the Plan fiduciary and claims

[2] Sonazo provided the anesthesia services at Zenith's facility. (Docket Entry No. 32-1 ¶ 2).

administrator. (Docket Entry No. 31-1 ¶¶ 7, 8).[3] Before providing treatment, Zenith called United to confirm that the patients and the proposed procedures were covered. (Docket Entry No. 32-1 ¶¶ 3, 4). Zenith asserts that at no point during these calls did United disclose the anti-assignment provision or provide Zenith with the Plan documents. (*Id.*). Reimer and Alton executed assignments of benefits to Zenith in 2020 as part of the registration process to receive treatment. (*Id.* ¶ 5; Docket Entry Nos. 32-2, 32-3).

After treating Alton and Reimer, Zenith and Sonazo submitted claims for reimbursement to United for approximately $1.4 million. (Docket Entry No. 32-1 ¶ 7). In early 2022, United began denying the claims on the ground that coverage had been cancelled or terminated. (*Id.*). Zenith then submitted formal appeals to the defendants' Administrative Committee. (*Id.* ¶ 9). In November 2022, the Committee issued a final determination letter denying the claim for services provided to Reimer based on "Timely Filing." (Docket Entry No. 32-7 at 3). The final determination letter stated that "the Anadarko Petroleum Health Benefits Plan prohibits an assignment of claims and any attempt to assign a claim is void." (*Id.* at 2). The letter also stated that "[i]f you do not agree with the decision of the Committee, you may bring legal action to seek the benefits sought in your Claim." (*Id.* at 2–3). Anadarko sent another letter to Zenith (and Sonazo, which had now become involved in the putative litigation) in August 2023, explaining the anti-assignment provision. (Docket Entry No. 31-8).

In August 2024, Zenith and Sonazo sued Anadarko and Occidental in this court. (Docket Entry No. 1). They asserted five claims: (1) denial of benefits under 29 U.S.C. § 1132(a)(1)(B),

[3] On December 31, 2020, Anadarko terminated its contract with United, but United continued administering claims for services provided before January 1, 2021, as long as those claims were submitted in accordance with applicable procedures. (Docket Entry No. 31-1 ¶ 8).

(2) breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), (3) breach of contract, (4) promissory estoppel, and (5) quantum meruit. (*Id.* ¶ 18–36). The defendants moved to dismiss in October 2024. (Docket Entry No. 10). The court heard argument on the motion, (Docket Entry No. 20), ordered supplemental briefing, (Docket Entry Nos. 23, 26), and held another hearing focused on the effect of *Angelina Emergency Medicine Associates PA v. Blue Cross and Blue Shield*, 156 F.4th 505 (5th Cir. 2025), (Docket Entry No. 30). The court terminated the motion to dismiss, ordered the parties to complete jurisdictional discovery, and ordered Anadarko and Occidental to file any summary judgment motion no later than November 21, 2025. (*Id.*). On November 21, 2025, Anadarko and Occidental filed their motion for summary judgment. (Docket Entry No. 31). Zenith and Sonazo filed a response. (Docket Entry No. 32). The court held oral argument on the motion for summary judgment. (Docket Entry No. 33).

## II. The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ'

on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250).

## III. Analysis

### A. The Anti-Assignment Clause

The first question is whether Occidental and Anadarko are entitled to summary judgment on the ERISA claims because the Plan's anti-assignment clause prohibits beneficiaries from assigning their rights, benefits, and causes of action to any person or entity, including medical providers. (Docket Entry No. 31 at 8). "ERISA does not supply the provider with a basis for bringing its claims directly against the appellants; instead, the provider's standing to bring this lawsuit must be derived from the beneficiary and is subject to any restrictions contained in the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019). "If the provider lacks standing to bring the lawsuit due to a valid and enforceable anti-assignment clause, then federal courts lack jurisdiction to hear the case." *Id.* "[W]hen an ERISA plan contains a valid anti-assignment provision, a putative assignment to a healthcare provider is invalid and cannot bestow the provider with standing to sue under the plan." *Id.* at 251.

Anti-assignment clauses are subject to waiver and estoppel. In *Angelina Emergency Medicine Associates PA v. Blue Cross and Blue Shield of Alabama*, the Fifth Circuit clarified that the less-strict theory of "*Hermann* estoppel," rather than the "more stringent" theory of "ERISA estoppel," applies to anti-assignment clauses.[4] 156 F.4th 505, 519–20 (5th Cir. 2025), *cert. denied*

[4] The Fifth Circuit "ha[s] recognized ERISA estoppel as a basis for legal relief that lies when a plaintiff shows '(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances.'" *Angelina Emergency*, 156 F.4th at 518 (quoting *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005)). The Fifth Circuit has "explained that 'ERISA disfavors generally arguments based on promissory estoppel or on alleged modifications of plan documents that are not made via the plan's internal amendment process.'" *Id.* (quoting *Mello*, 432 F.3d at 447).

*sub nom. Blue Cross & Blue Shield v. Angelina Emergency Med.*, No. 25-1020, 2026 WL 1513316 (U.S. June 1, 2026).[5] In *Hermann Hospital v. MEBA Medical & Benefits Plan*,[6] the Fifth Circuit held that the plan at issue was estopped from invoking an anti-assignment clause to deny payments because it postposed payments for three years while it investigated the claim. 959 F.2d at 573–74 (5th Cir. 1992). *Hermann* "based its estoppel ruling on the equitable principle that a plan could not wait for years to assert an anti-assignment clause that the third party bearing the assignment had no way of learning about." *Angelina Emergency*, 156 F.4th at 519.

In *Angelina Emergency*, the Fifth Circuit analyzed whether the facts more closely resembled *Hermann*, in which the Plan administrators dragged out investigating the claims for three years before belatedly asserting the anti-assignment clause after the plaintiff sued, or *Dialysis Newco*, in which the Fifth Circuit held that the anti-assignment clause was enforceable in part because the assignment occurred only days before the litigation was filed. *Id.* After reviewing the available facts, the Fifth Circuit held that the case more closely resembled *Hermann*, although more discovery was needed. *Id.* at 520. The court explained:

> Without further evidence about the exact interactions between the parties, *Hermann* seems more applicable. The patients assigned all rights before treatment of emergency conditions, not akin to the second, considered assignment in *Dialysis Newco* where the patient assigned their rights on the eve of litigation. The Physician Groups, who had received partial reimbursement, then attempted to receive full payment from the Blue Plans using the publicly available manual for provider claims and appeals, and even requested the underlying plan documents, which the Blue Plans did not provide. . . . The record does not contain any alternative basis by which the Physician Groups could have learned of the anti-

---

[5] The panel opinion in *Angelina* was lightly amended—with no substantive differences applicable here—upon panel rehearing. The Supreme Court denied certiorari in June 2026. Following the denial of certiorari, the underlying district court case, which had been stayed pending the outcome of the certiorari decision, has begun to move along again. *Angelina Emergency v Med. Assocs. PA v. Blue Cross & Blue Shield of Alabama*, No. 3:18-cv-00425-X, Docket Entry Nos. 487, 488 (N.D. Tex. June 22, 2026).

[6] Some courts call this case *Hermann II* to distinguish the relevant opinion from the first appeal. Like the Fifth Circuit in *Angelina Emergency*, this court refers to the relevant *Hermann* case as "*Hermann*" and not "*Hermann II*."

> assignment clauses contained within the plans, especially because the Blue Plans did engage in partial payment and discussion with the Groups—just as in *Hermann*. And the Blue Plans do not identify any alternative manner that the Physician Groups should have used to learn of the text of the Plans.

The *Angelina Emergency* court concluded that the district court erred by failing to apply *Hermann* estoppel and remanded, noting that "[i]t is possible that, for some or all claims, the Physician Groups possessed the underlying plans and therefore should have known about the anti-assignment clauses. That is a fact issue that the district court must determine as to each claim." *Id.*

As in *Angelina Emergency*, the parties here vigorously dispute whether the facts more closely resemble *Hermann* or *Dialysis Newco*. Occidental and Anadarko argue that the facts of this case present a "routine claims processing scenario." (Docket Entry No. 31 at 20). They argue that here, unlike *Hermann*, United did not deny payment based on the anti-assignment clause. Instead, United processed the claims in accordance with Plan terms, and once the Zenith reached out to Occidental and Anadarko, they promptly informed Zenith about the Plan's anti-assignment clause, even though Zenith and Sonazo did not provide the 2020 assignments until this litigation (and only provided separate assignments on appeals that were executed in 2022). (*Id.* at 20–21). Occidental and Anadarko argue that this was "not a situation where Defendants ignored Plaintiffs for years, failed to process their claims, and then denied the claims on the basis of an anti-assignment clause." (*Id.* at 21). Rather, they argue that here, as in *Dialysis Newco*, the claims were denied for reasons unrelated to the anti-assignment clauses. *Id.*

Zenith and Occidental respond that under *Angelina Emergency,* this court must apply *Hermann* estoppel and that the "record here closely parallels" *Hermann*. (*Id.* ¶ 22). Zenith and Occidental point out that: (1) before providing services, they contacted United to verify eligibility; (2) United confirmed that the patients were covered, did not mention the anti-assignment clause, and did not provide the Plan or SPD; (3) relying on that verification, Zenith and Sonazo provided

treatment; (4) from June 2020 to November 2022, Occidental and Anadarko (through United) processed the claims, requested supplemental documentation, and denied payment on substantive grounds; (5) there was no written reference to the anti-assignment clause until November 2022; and (6) Occidental and Anadarko did not assert the anti-assignment clause as a bar until August 2023. (*Id.* ¶¶ 22–24). Zenith and Sonazo also argue that, even setting aside the verification calls and extended claims processing, the letter from the Administrative Committee stating that if Zenith and Occidental did not agree with the committee's decision, they could sue for the benefits, constitutes waiver. (*Id.* ¶ 26).

This case does not fall cleanly into any of the Fifth Circuit's precedents. Unlike *Dialysis Newco*, and like *Angelina Emergency* and *Hermann,* the claims here were not assigned on the eve of litigation, but rather before the medical services were provided. Like *Angelina Emergency* and *Hermann*, the anti-assignment clauses were not raised until years after Zenith and Sonazo first began pursuing payment. And while Occidental and Anadarko argue that Zenith and Sonazo's claims were not denied because of the anti-assignment clauses, they have not cited clear support for their argument that this cuts in favor of estoppel rather than against it.[7] Rather, *Hermann* is clear that a plan cannot belatedly assert an anti-assignment clause to avoid a lawsuit. *Hermann*, 959 F.2d at 574. Occidental and Anadarko do not articulate why United's alleged failure to

[7] Occidental and Anadarko cite *Angelina Emergency* to support their argument that this case is like *Dialysis Newco* because in that case, "payments were denied for reasons unrelated to an anti-assignment clause[.]" (Docket Entry No. 31 at 20). However, in *Angelina Emergency*, the plaintiffs' appeals to Blue Cross were rejected on grounds that did not mention anti-assignment clauses (to the extent the appeals mentioned any reason for denial at all). 156 F.4th at 512. Nonetheless, the Fifth Circuit held that there was a fact issue as to estoppel. *Id.* at 520. In short, *Angelina Emergency* indicates that the relevant question is simply whether an insurer should be estopped from "enforcing" (even if raised for the first time in litigation) an anti-assignment clause that had not yet been applied in any form. To the extent that the defendants are recycling the arguments from their motion to dismiss that were based on *Cell Science Systems Corp. v. Louisiana Health Service*, 804 F. App'x 260, 265–66 (5th Cir. 2020), *Angelina Emergency* indicates that much of *Cell Science*'s (non-binding) reasoning is no longer relevant.

mention or invoke the anti-assignment clause for years, even though Occidental and Anadarko raised the issue soon after they were informed of Zenith and Sonazo's claims, is irrelevant to this court's determination of whether estoppel applies. (*See generally* Docket Entry No. 31).

The record appears to be missing several of the facts that *Angelina Emergency* relied on in remanding for further discovery. Among other things, there is no evidence in the record as to whether Zenith and Sonazo received partial payment for the medical services they provided. Zenith and Sonazo's complaint alleges while some of the claims they submitted were unpaid, others were "underpaid." (Docket Entry No. 1 ¶ 25). The summary judgment record does not reveal evidence of partial payment. Occidental and Anadarko merely argue that "[a]ny argument that Defendants compromised the Plan's anti-assignment clause by paying some of the claims at issue directly to the Plaintiffs is a non-starter" because the Plan allows partial payment without waiving the anti-assignment clause. (Docket Entry No. 31 at 18). In *Angelina Emergency*, however, the Fifth Circuit concluded (in evaluating estoppel)[8] that the fact that the "Physicians Groups . . . received partial responsive reimbursement" to be at least one relevant factor in favor of applying *Hermann* estoppel. 156 F.4th at 520.

Both sides also effectively admit that the record is incomplete as to what Zenith and Sonazo should have known about the Plan; what United would have known about the assignments; and when either side should have known such information. (*See* Docket Entry No. 32 ¶¶ 11, 14; Docket

[8] The underlying district court opinion in *Angelina Emergency* interchangeably used the terms waiver and estoppel. *See Angelina Emergency Med. Assocs. v. Health Care Serv. Corp.*, No. 3:18-CV-0425-X, 2024 WL 102666, at *9–10 (N.D. Tex. Jan. 9, 2024). The Fifth Circuit substantively discussed only estoppel in *Angelina Emergency,* 156 F.4th at 518–20, and in *Hermann*, 959 F.2d at 574–75. In the Fifth Circuit, waiver and estoppel are different concepts. *See Houston Home Dialysis v. Blue Cross & Blue Shield of Tex.*, Civ. Action No. H-17-2095, 2018 WL 5249996, at *5–6 (S.D. Tex. Oct. 22, 2018). Because the court concludes that there is a genuine factual dispute material to determining whether estoppel applies, the alternative arguments as to waiver are not discussed.

Entry No. 32-6 at 5–6).[9] Both *Angelina Emergency* and *Hermann* relied on record evidence of what the assignees and the insurer knew or should have known before determining that estoppel applied (in *Hermann*), or found that more evidence was needed before determining whether estoppel applied (in *Angelina Emergency*).[10] The court concludes that the present record is insufficient to permit a ruling as a matter of law as to whether Occidental and Anadarko are estopped from enforcing the anti-assignment clauses.

Occidental and Anadarko argue that the anti-assignment clause issue is one of subject matter jurisdiction and that Zenith and Sonazo have failed to meet that burden. (Docket Entry No. 31 at 16). But, as noted above, in *Angelina Emergency*, the Fifth Circuit did not dismiss for lack of jurisdiction but remanded for further factual development on whether estoppel applied. On remand, the district court concluded that "if the Fifth Circuit's opinion is clear on anything, it's that what remains of this case must go to trial."[11] *Angelina Emergency v. Med. Assocs. PA v. Blue Cross & Blue Shield of Alabama*, No. 3:18-cv-00425-X, Docket Entry No. 477 at 6 (N.D. Tex. Mar. 19, 2026). The defendants in *Angelina Emergency* admitted that "the Fifth Circuit's ruling may warrant additional limited discovery to address fact issues the Fifth Circuit found precluded summary judgment." *Angelina Emergency*, No. 3:18-cv-00425-X, Docket Entry No. 487 at 6

---

[9] That Alton and Reimer had access to the Plans is irrelevant; the relevant question is what Zenith and Sonazo knew or should have known about the Plans and the anti-assignment clauses in the plans. *See Angelina Emergency*, 156 F.4th at 520.

[10] *Hermann* also turned on whether the defendant knew about the assignment. The Fifth Circuit concluded that "[i]t had to be clear to MEBA that Hermann, in admitting and providing services to Mrs. Nicholas, was relying on that assignment as its entitlement to recover payment for those Plan benefits that Hermann furnished to Mrs. Nicholas." 959 F.3d at 574. Again, Occidental and Anadarko have not explained why United's knowledge (or lack thereof) of the assignments at issue would be irrelevant. Information as to United's knowledge and actions is not in the record.

[11] The parties agreed that there was no right to a jury trial on the ERISA claims.

(N.D. Tex. June 22, 2026). Zenith and Sonazo need not show that estoppel applies to the anti-assignment clause, but must show that there are genuine factual disputes material to determining whether estoppel applies.

A bench trial to determine estoppel when the record is sufficient accords with *Hermann,* in which the district court held a bench trial to determine whether the patient had validly assigned her benefits. 959 F.2d at 572. Only on the basis of that complete record did the Fifth Circuit reverse the district court's decision and hold that the defendant was estopped from relying on the anti-assignment clause. *Id.* at 574. And courts have granted summary judgment to defendants in similar cases only when the plaintiff had not provided summary judgment evidence establishing disputed facts material to determining estoppel. *See Ctr. for Restorative Breast Surgery, L.L.C. v. Blue Cross Blue Shield of La.*, Civ. Action No. 11-806, 2016 WL 4208479, at *4–5 (E.D. La. Aug. 10, 2016) (noting that "[t]he decision in *Hermann II* was issued after the district court held a bench trial and the court had all of the evidence regarding estoppel and waiver before it," but granting summary judgment to the defendant because the plaintiffs had not provided any evidence from which the court could infer that the defendants waived or were estopped from asserting their right to enforce the anti-assignment provisions); *Encompass Office Sols., Inc. v. La. Health Serv. & Indem. Co.*, No. 3:11-CV-1471-P, 2013 WL 12310676, at *10 (N.D. Tex. Sep. 17, 2013) ("Accordingly, the Court finds that there is a genuine issue of material fact as to whether [Blue Cross] waived the anti-assignment language contained in its plans. The Court therefore DENIES [Blue Cross's] Motion with respect to the plans' anti-assignment language.").

Although this court ordered jurisdictional discovery, the resulting record is still insufficient to determine whether *Hermann* estoppel applies. Zenith and Sonazo have demonstrated that there is a genuine factual dispute material to that determination. The evidence that Zenith and Sonazo

assigned the claims before providing the medical care and long before receiving the SPD distinguishes this case from *Dialysis Newco*. But, as in *Angelina Emergency*, the record still lacks material information. Both the Fifth Circuit's decision in *Angelina Emergency* and the Northern District of Texas's interpretation of *Angelina Emergency* on remand support denying summary judgment on the current record.

The court denies Occidental and Anadarko's motion for summary judgment on the ERISA claims to the extent they argue that the anti-assignment clause bars those claims.

**B. The Duplicative ERISA claims**

Occidental and Anadarko next argue that, in any event, the court should dismiss the ERISA breach of fiduciary duty claim as duplicative of the denial of benefits claim. (Docket Entry No. 31 at 21). Zenith and Occidental respond that their claims are not duplicative because the "claim is pleaded in the alternative, targets distinct conduct, and seeks different relief." (Docket Entry No. 32 ¶ 39).

Fifth Circuit precedent is clear that a plaintiff cannot bring both a § 1132(a)(1)(B) denial of benefits claims and a § 1132(a)(3) breach of fiduciary duty claim. *See, e.g.*, *Innova Hosp. San Antonio Ltd. P'ship v. Blue Cross & Blue Shield of Ga.*, 892 F.3d 719, 733–34 (5th Cir. 2018). In *Innova*, the Fifth Circuit concluded that because "the essence" of the breach of fiduciary duty claim was that the insurers failed to reimburse the hospital under the plan, the hospital had an adequate mechanism for redress under § 1132(a)(1)(B) and "thus may not simultaneously plead claims under § 1132(a)(3)." *Id.* at 734. It did not matter that the plaintiff was requesting alternative equitable relief for the breach of fiduciary duty claim; all that mattered was the "essence" of its claim. *Id.* at 733–34.

Courts in the Fifth Circuit routinely hold that *Innova* and prior Fifth Circuit precedent require dismissal of alternatively pleaded ERISA denial of benefits and breach of fiduciary duty claims when they are both ultimately based on the failure to properly pay. *See, e.g.*, *Sobolewski v. Prudential Life Ins. Co. of Am.*, No. 4:20-cv-02415, 2021 WL 1219986, at *6 (S.D. Tex. Mar. 31, 2021) (dismissing an alternatively pleaded ERISA breach of fiduciary duty claim as duplicative because "binding precedent" held that the court must do so); *Gilmore for Grantor Tr. of Victory Parent Co., LLC v. Aetna Health, Inc.*, No. SA-17-CV-00510-FB, 2018 WL 1887296, at *11 (W.D. Tex. Jan. 19, 2018) (recommending that the district court dismiss the ERISA breach of fiduciary duty claim because "the undersigned is bound by Fifth Circuit precedent insofar as it has held that an ERISA plaintiff may not simultaneously pursue both a claim for unpaid benefits and for breach of fiduciary duty, at least where the claims are both premised on the denial of plan benefits.").

In this case, the breach of fiduciary duty claim seeks recovery of the same unpaid benefits allegedly owed under the Plan. (Docket Entry No. 1 ⁋ 25 ("Due to the Defendants' fiduciary breach, Plaintiffs suffered damages in the form of unpaid or underpaid claims.")). "[T]he essence" of the complaint is that Occidental and Anadarko failed to properly reimburse them. Zenith and Sonazo have an "adequate mechanism" for redress under § 1132(a)(1)(B) and "may not simultaneously" plead their claims under § 1132(a)(3). *Innova*, 892 F.3d at 734. "Looking at the underlying alleged injury," the claims are duplicative. *Manual v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018); *see also Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, 2015 WL 3756492, at *5 (S.D. Tex. June 16, 2015) (noting that "it is clear from the Complaint that the claim for benefits is the focus and 'predominate cause of action' in the lawsuit" and granting the motion to dismiss the ERISA fiduciary duty claim).

Zenith and Sonazo cannot proceed with their duplicative ERISA breach of fiduciary duty claim. The court grants the motion for summary judgment on this claim.

**C. The State-Law Claims**

Finally, Occidental and Anadarko move for summary judgment on the state-law claims,[12] arguing that they are preempted by ERISA. (Docket Entry No. 31 at 23). Occidental and Anadarko argue that because the state-law claims hinge on their alleged responsibility to pay benefits under the Plan, those claims "relate to" an ERISA plan and are preempted. (*Id.*). Zenith and Sonazo respond that their claims are not preempted because the Fifth Circuit has allowed claims based on pre-service misrepresentation to proceed. (Docket Entry No. 32 ¶ 49).

There are two types of ERISA preemption: complete preemption under 29 U.S.C. § 1132(a) and conflict preemption under 29 U.S.C. § 1144(a). *Martinez v. Prudential Ins. Co. of Am.*, 594 F. Supp. 3d 827, 838 (S.D. Tex. Sep. 27, 2021). "To determine whether ERISA completely preempts a state-law claim, the primary question is whether the state-law claim 'falls within the scope'" of § 1132(a). *Id.* at 838–39. "In other words, if an individual, at some point in time, could have brought his claim under [§ 1132(a)], and where there is no other independent legal duty that is implicated by the defendant's actions, then the individual's cause of action is completely pre-empted by" § 1132(a) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Meanwhile, § 1144(a) "preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" under ERISA. *Id.* (quoting 11 U.S.C. § 1144(a)). "Conflict preemption occurs 'if a two-prong test is satisfied: (1) The state law claims addresses an area of

[12] Again, there has been no discovery on non-jurisdictional issues, so Anadarko and Occidental's arguments are more reflective of those normally made at the motion to dismiss stage. Because Anadarko and Occidental only challenge the state-law claims on the grounds of preemption and do not challenge any other aspects of these claims, the court only addresses the over-arching preemption arguments.

exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Id.* (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004).

"Whether a third-party health care provider's claims are completely preempted by ERISA depends on precisely what rights the provider seeks to enforce and what legal duty it alleges has been breached." *Ctr. for Restorative Breast Surgery, L.L.C. v. Humana Health Benefit Plan of La., Inc.*, Civ. Action No. 10-4346, 2011 WL 1103760, at *2 (E.D. La. Mar. 22, 2011). "One possibility is that a third-party health care provider can seek to enforce its patient's rights to reimbursement pursuant to the terms of the ERISA plan, in a derivative capacity pursuant to an assignment of the patient's rights." *Id.* "That kind of derivative claim is completely preempted by ERISA." *Id.* "On the other hand, if a health care provider can assert a right to payment based on some separate agreement between itself and an ERISA defendant (such as a provider agreement or an alleged verification of reimbursement prior to providing medical services), that direct claim is not completely preempted by ERISA." *Id.* "A health care provider may also have both a valid assignment of its patient's rights and a direct claim arising under state law and can elect to assert either or both of those claims." *Id.*

The court declines to dismiss the state-law claims on the present record. The premise of Zenith and Sonazo's state-law claims is that they called United to verify coverage, and United stated that they would be reimbursed for the medical services provided under the Plan's out-of-network benefits. (*See, e.g.*, Docket Entry No. 1 ⁋ 28; Docket Entry No. 31-10 at 7). Zenith further asserts that United did not mention the anti-assignment clauses in that call or mention any Plan terms that might prevent payment. (Docket Entry No. 31-10 at 8). In *Access Mediquip L.L.C. v.*

*United Healthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012),[13] the Fifth Circuit drew a distinction between claims premised on independent misrepresentations to the third-party provider and those that are not. The Fifth Circuit explained that the misrepresentation-based claims were not preempted because:

> The merits of Access's misrepresentation claims do not depend on whether its services were or were not fully covered under the patients' plans. If the plans provide less coverage than United's agents indicated, Access must still prove that it was reasonable to rely on their statements as representations of how much and under what terms Access could expect to be paid. If the plans do provide the same level of coverage United indicated, Access may nevertheless seek to prove its misrepresentation claims by showing that United's statements regarding coverage, while accurate, were nevertheless misleading because United's agents omitted to mention that, covered or not, Access's services would not be reimbursed.

*Id.* at 385 (citations omitted). The Fifth Circuit further explained that misrepresentations to third-party beneficiaries do not affect an aspect of a relationship that ERISA was meant to regulate:

> United points out that it is a plan fiduciary and its decisions regarding what claims to pay constitute administration of an ERISA plan that is governed by the statute. The critical distinction, however, is not whether the parties to a claim are traditional ERISA entities, but whether the claims affect an aspect of a *relationship* that is comprehensively regulated by ERISA. . . . Moreover, a one-time recovery for Access on its state-law misrepresentation claims will not affect the on-going administration or obligations of the ERISA plans that United administers, because the recovery in no way expands the rights of the patient to receive benefits under the terms of the health care plan. . . . The administrator's handling of those inquiries is not a domain of behavior that Congress intended to regulate with the passage of ERISA, which imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter.

*Id.* at 365–86 (quotation marks and quoting references omitted).

As the Fifth Circuit further observed, applying ERISA preemption to misrepresentation claims undermines, rather than furthers, Congress's interest in enacting ERISA. That is, "[i]f

[13] The en banc court reinstated the panel opinion and overruled the parts of several prior Fifth Circuit opinions that appeared to be in tension with the panel's decision that three of the state law claims were not preempted by ERISA.

preemption denies [the third party] recourse to state law for expenses incurred due to plan fiduciaries' misleading statements about coverage, 'providers will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences before treatment will be offered,'" which "'does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA." *Id.* at 384 (quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247–48 (5th Cir. 1990)).

Courts have found similar claims—that a health care provider received a misleading verification—sufficient to survive ERISA preemption. *See, e.g.*, *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, Civ. Action No. 11-806, 2014 WL 4930443, at *6 (E.D. La. Sep. 30, 2014) ("Despite Defendants' assertions, Plaintiffs' state law claims of detrimental reliance, breach of contract, fraud, and negligent misrepresentation are not brought by Plaintiffs in their capacities as assignees of ERISA rights and do not address areas of exclusive federal concern because the claims arise from Defendants' alleged representations made to Plaintiffs directly."); *Post Acute Speciality Hosp. of Corpus Christi v. Baker Benefits Adm'rs, Inc.*, No. 2:15-CV-494, 2016 WL 525481, at *4 (S.D. Tex. Feb. 8, 2016) (noting that in *Access*, "[t]he court indicated that even accurate statements could be misleading if the representations failed to mention a reason the claims might not be paid"); *Austin Neurospine, PLLC v. Aetna Life Ins. Co.*, A-24-CV-672-RP, 2025 WL 879569, at *6 (W.D. Tex. Jan. 31, 2025), *report and recommendation adopted sub nom. Neurospine v. Aetna Health Inc.*, 2025 WL 875810 (N.D. Tex. Mar. 20, 2025).

To the extent that the complaint is construed as bringing state-law claims against Occidental and Anadarko as assignees, the court agrees that those claims are preempted. That is, to the extent that Zenith and Sonazo intend to prove their claims by showing that that the Plan was improperly administered, those claims are completely preempted. *See Ambulatory Infusion*

*Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, Civ. Action No. H-05-4389, 2006 WL 2521411, at *5 (S.D. Tex. Aug. 29, 2006). But "insofar as" these claims are asserted based on the independent misrepresentations allegedly made to Zenith and Sonazo about the reimbursements they would receive, those claims are not preempted. *See Austin Neurospine, PLLC*, 2025 WL 879569, at *6; *see also Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 10-4346, 2014 WL 1276503, at *7 (E.D. La. Mar. 27, 2014) ("The parties do not contest that a service was actually covered by the ERISA plan; rather, they dispute whether the Center and St. Charles relied on Humana's alleged representations that it would pay them for a service as well as the amount they would be paid for the service. Accordingly, none of these claims depend on the terms of the ERISA plan. Thus, they do not relate to the plan nor do they involve a relationship like that among traditional entities.").

In general, "ERISA preemption is an affirmative defense which must be proven by the defendant at trial." *Access Mediquip*, 662 F.3d at 378. "[W]hen a movant seeks summary judgment by showing that the allegations in the complaint render the claims preempted, those allegations are construed in the light most favorable to the non-movant." *Id.* Taking all the allegations and limited record evidence (because the court ordered only jurisdictional discovery) in the light most favorable to Zenith and Sonazo, Occidental and Anadarko have not shown that they are entitled to summary judgment in full on the state law claims at this point. Occidental and Anadarko's briefing does not address the independent misrepresentations allegedly made to Zenith and Sonazo and does not grapple with the broad language of *Access Mediquip*.

As it did in *Ambulatory Infusion Therapy Specialists*, this court concludes that the issue of conflict preemption is best determined on a more developed record. 2006 WL 2521411, at *6 ("This court will convert the motion to dismiss the negligent misrepresentation and the promissory

estoppel claims on the basis of conflict preemption into a motion for summary judgment. The parties may conduct discovery limited to conflict preemption issues and supplement the record.”). But on the current record, the court concludes that ERISA does not preempt the state-law claims in full and denies the request for summary judgment as to these claims.

## IV. Conclusion

The court grants in part and denies in part the motion for summary judgment. The court sets a status conference for October 2, 2026, at 11:50 a.m. Central Time, via Zoom.

SIGNED on August 17, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge